Steven C. Fustolo v. 50 Thomas Patton Drive et al. Mr. Nicholas? Nicholas. Nicholas. Sorry. That's fine, your honor. I've been called all sorts of different names. So have I, so don't feel bad. Your honor, this is an appeal of a decision of a bankruptcy court and ultimately a district court affirming the bankruptcy court on an involuntary bankruptcy petition. There are essentially three issues that are before the court. Whether an alleged debtor in an involuntary bankruptcy can ever assert a bona fide dispute exists when a judgment that is on appeal has been filed or does exist. Secondly, whether a creditor who asserts in that involuntary petition that its claim is the judgment that is currently on appeal can then try to pass out the individual portions of that judgment to state that, well, we have separate claims within the judgment that are now the claim that we have. And finally, as a subpact to that, whether any dispute with respect to the amount of the claim does disqualify a creditor from participating in a bankruptcy petition. In this particular instance, there can be no question about several things. One, there's a $6.7 million judgment that Patton Drive obtained against Mr. Pistolo. In that $6.7 million judgment, there's a breach of contract judgment for 4.0 of that $6.7 million on a phantom guarantee. It just doesn't exist. And, in fact, Patton Drive's counsel admitted that that does not exist. And that's contained at page 486 of the record in part of the judgment. Why does that matter? The remaining judgment of $2.7 million has no such concession. And so why does it matter if the judgment is in excess of a certain sum, so long as that sum would be a valid basis for the creditor to initiate these involuntary proceedings? I'm going to answer Your Honor's question in two respects. That's good. That's fine. Number one, there is no dispute that there's an underlying two promissory notes totaling about $1.25 million  That's not in dispute. What is in dispute with respect to those two notes is an obligation to pay you serious interest rate at 35 percent based upon the fact that Patton Drive failed to supply the Attorney General's Office any usury notices prior to advancing funds and executing the documentation. So we have still a dispute with respect to the $2.7 million, but it is partial. And I would concede that aspect to the question of the court. Well, take the $1.25. As I understand it, there's no dispute regarding the $1.25, but you're saying it's subsumed within a larger contract claim, which includes the alleged usurious rate, which is disputed, and then you're arguing both of those in any event emerged into a judgment. That is correct. Help me understand, as a practical matter, what we're talking about here. Suppose that the creditor had a judgment for the $1.25 entirely undisputed and unappealed. And suppose they had a second action for the $4.00. I wouldn't be standing before this court. Okay. In other words, they could put your client into involuntary bankruptcy as the third creditor based on the $1.25 judgment. That's correct. And then how would that bankruptcy proceeding play out any differently for your client than would what we now have here? What we now have here is not what Your Honor has just suggested. What we have here is one judgment for $6.7 million that contains judgments on four separate promising notes. Right. So how is it going to play out differently at the bottom line? It plays out differently under the Bankruptcy Code and Section 301 of the Bankruptcy Code that requires that the obligation not be subject to a bona fide dispute as to liability or amount. Now you're talking about whether you could commence as a third creditor a bankruptcy based on the other. What I wanted to do is just take that hypothetical that I gave you in which we both agree they could have commenced the involuntary proceeding. They could have joined it. Just based on the $1.25 and then there would be this other claim in the bankruptcy against your client that would be disputed. That's correct. How would that play out any differently than what we have here by simply saying, well, part of the $6.7 is undisputed? Two reasons. Number one, the $6.7 million judgment, the underlying claims merge into the judgment on the restatement of judgments. And so you have now a claim and Patent Drive chose its claim to be the $6.7 million judgment. That's in the involuntary petition, which is the very first pages of the appendix that is provided to this panel. And as a result, that claim is disputed. There's a bona fide dispute with respect to the amount of that claim. I'm sorry. If they had filed a separate claim and gotten a separate judgment, we would not be here. But I'm not interested in whether you'd be here or not. I'm trying to find out, and maybe you don't know, but I'm trying to find out how would there have been any practical difference on the parties in terms of how the bankruptcy proceeding would have paid out if they had split the two claims. And the reason I'm asking that is if there would have been no practical difference at all had they split the two claims, then I'm a lot less interested in trying to draw fine lines to say that because they're merged, something different happens. On the other hand, if they gained some advantage by putting them together with the disputed portion, then you've got a much better position. So I'm trying to find out how the bankruptcy proceeding would come out different. In fact, they did gain an advantage, and part of the reason why the courts have said disputed as a liability or amount is that the bankruptcy, involuntary bankruptcy petition is a major weapon that can be used by a creditor to completely disrupt a purported debtor's life. And they use that, and by doing so, they can coerce. If there is a single judgment with a larger amount, they can effectively coerce that debtor or alleged debtor to pay a larger amount than he realistically owes. So explain that to me. Take the example, the 1.25. Why would your client have come out better in that scenario than they're going to come out if we affirm here? It will come out better in that scenario because what will have to happen is, A, we may need three creditors again to file this involuntary petition, and I don't think they're going to get three creditors to refile an involuntary petition. You're fighting the hypothetical. Go back to they filed the 1.25 as the third creditor, and they said we have this other 4 million. That bankruptcy proceeding would have played out. There would have been an end to it. How would your client end up worse off than if we affirm this case? My client would end up worse off because we have claims that are filed in this case that are not before the court, but we have claims that are filed in the underlying bankruptcy case on the $6.7 million judgment. If my client has to come up with additional money in order to satisfy those obligations, then he is worse off than if he only has an obligation of 1.25 million. And suppose they stipulate to the bankruptcy court that, in fact, your obligation here is the 1.25 million and not the larger figure because their counsel have conceded this. How are you any worse off? If they concede that, I don't believe I am worse off. But what I want to point out to the panel is that – Except for your technical argument that it takes three. No, the technical argument is that with respect to a bona fide dispute as to liability or amount, Congress could have if they wanted to eliminate this issue, which questions are very legitimate. But if Congress had wanted to eliminate that, all they had to have done is add a phrase simply stating that so long as a portion of the claim is not in dispute. They did not do that. And the Supreme Court says to us that we are not to divine Congress' intent unless it is specifically stated. Where the language in a statute is clear, unambiguous, and I would submit to the court that this statute is clear and unambiguous, that we may not then overrule what Congress intended or what Congress stated in that statute. And my client as a result is an involuntary debtor still and has been for the better part of the last two years or over two years at this point in time. Can't they still pursue disputed obligations in the bankruptcy proceeding? They can file a proof of claim for any disputed obligation, absolutely. So if we say here, look, there's at least 1.25 that's undisputed so they could commence this proceeding, then they file if they want, they file a proof of claim for the interest on the 1.25 plus the other 4 million, and you'll fight that out in bankruptcy court? It won't be my client's, the trustee's obligation to fight that aspect of the obligation. But I go to the Piccadilly Circus case that is cited in my papers and the Baker-Botts decision, recent decision of the Supreme Court. You look at the clear meaning, and you don't have to look behind the clear meaning of the statute. It may be technical. It may be that this particular claimant chose the wrong claim to assert, but that's not the debtor's problem except to the extent that a court goes along with that. The problem lies with the underlying bona fide dispute that exists. So long as we have a bona fide dispute, they are not an eligible creditor in the bankruptcy proceeding. And there's a line of cases that I've cited in the brief that this panel has to that effect. And I do want to address the usurious interest rate very quickly as well. Mass statute requires that the documentation be received, not submitted to or forwarded to, but received by the Attorney General's office before the loan funds are advanced, before the documentation is executed. That's also admitted, not what happened in this particular case. What did the district court rule on this aspect of your claim? It did not arise to the level of a bona fide dispute, and I would submit that it does since the usurious interest rate was charged in the judgment at 35 percent per annum. And this is a clear violation. The only two cases on this, the Clean Havers and the Belfer case, both say you cap interest at 20 percent, you have equity to do anything else that you want to do, including eliminate the debt in its entirety. Now, I can't stand before this panel and say that that elimination of the debt in its entirety would rise to a bona fide dispute. It is a dispute as to liability, but not to the level of bona fide. We go to full faith and credit, which is what everybody relies upon when determining whether a bona fide dispute actually exists with respect to a non-state judgment. And when you look at Section 13 of the Restatement of Judgments, it has to be sufficiently firm and it has to have a reasoned decision behind it. Neither of those apply here. Let me ask you, because I see a tension in your argument about the judgment. You're saying on the one hand, and I think this is what you're saying now, that the judgment is not, in fact, sufficiently final for preclusion purposes. It seems to me you're also saying, though, that we should regard the judgment as sufficiently final for merger purposes. In other words, to merge the underlying claims into the judgment. I'm saying if it is sufficiently final for the one, it has to be sufficiently final for the other. Okay, and do you think it's sufficiently final for merger purposes? Merger purposes are a little bit different than, I would submit, than sufficiently final under Section 13. So now you're saying it can be final for one but not for the other. It can be, yes. How is that? The judgment merges once you have a final judgment that is not appealable. That would be my assertion. And that's the difference between final judgment under Section 13 and Section 18 of the Restatement of Judgments. But this judgment is appealable, you said. This judgment is not only appealable, it has been appealed. So therefore, you've just said merger doesn't apply. Merger only would apply if it's not appealable at the point in time that the involuntary petition is filed. That's correct. So, therefore, if merger doesn't apply here, then there's nothing that keeps us from focusing on the disparate underlying causes of action that gave rise to that judgment. Not correct, because what the plaintiff, the petitioning creditor, has stated in the petition under oath that its claim, singular, not multiple, but its claim is a $6.7 million judgment. That's the single claim that Patent Drive has asserted. I would ask the court to find it judicially stopped from asserting anything different at this point, because that's what the Bankruptcy Court had to rely upon in the first instance. That's what the District Court looked at as well. But I would agree that they passed out separate portions of that claim in determining whether or not there was a bona fide dispute. Thank you. Thank you. Mr. Fenser, good morning. Good morning, Your Honors. I'm Michael Fenser for 50 Thomas Patent Drive, and Richard Mayer, two of the petitioning creditors. Your Honor, I'm going to be covering the issues dealing with the issue preclusion and the application of Massachusetts state law. Ms. Cook is going to address other issues dealing with the disparity between the Fourth Circuit and the Ninth Circuit and some of the separate claim issues that the court has already touched upon. Mr. Nicklaus. Who's going to address whether there's any live continuing claim that your client is asserting for the $4 million under the phantom guarantee? Your Honor, I would suggest that the – I'd like to say two things in response to that. Your Honor, Massachusetts law and the application of O'Brien, the O'Brien v. Hanover insurance case that is cited in the principal brief of the appellees, tells us that the patent drive's existing claim under Massachusetts law under the state court judgment issued by the Superior Court is in the full amount of the $6.7 million. Whether or not there is any error embodied in that judgment or the amount of those damages, the Supreme Court, U.S. v. Moser, which is at 266 U.S. 236, tells us that that doesn't matter. Well, sure. If the trial court goofed up and you get a judgment that you weren't entitled to, you've got the judgment, but it's being appealed, right? That's correct. But on appeal, are you claiming, are you telling the Massachusetts appellate court that, yeah, this $4 million is a good claim, there was no mistake? Your Honor, under O'Brien, that's correct. Until that judgment is modified – No, no, no, no. The issue before the court is should we modify it because it's wrong. They're not precluded by the judgment from deciding the judgment is wrong when it's on direct appeal. That's correct, Your Honor. And so what are you saying to them about whether they should or should not determine there to be an error in that $4 million? Nothing at this time, and the reason for that, Your Honor, is, as Mr. Nicholas has already correctly pointed out, this case has been in bankruptcy since May 6th of 2013, nearly 30 months. It was the debtor, Mr. Nicholas's client, that took an appeal from the state court judgment. The notice of appeal was timely docketed in the superior court. But in 30 months, Mr. Fustolo has done nothing to move for relief from the automatic stay in bankruptcy to further his appeal to prosecute it. He has heralded these problems with patent drives judgment first in the bankruptcy court, then again in the U.S. District Court on intermediate appeal, and here in this court. The one place that Mr. Fustolo has never heralded these problems with the judgment is in the one court in the state of Massachusetts that can do something for him, which is the appeals court. And I would suggest to this court, Your Honors, that there's a tactical reason for that, and it touches upon what Judge Kayada was engaging Mr. Nicholas on, is that at the end of the day, there isn't a problem as to some of the damages that patent drive has taken in the judgment against Mr. Fustolo. At the end of the day, the debtor has conceded that Patriot, one of the other petitioning creditors, has got a judgment exceeding $20 million, which is unsecured. That satisfies the threshold amount required under 303. All patent drive needs to be an eligible creditor, and for this petition and the bankruptcy court's order for relief to stand, there's a judgment for one penny. The appeals court would have to entirely wipe out the patent drive judgment. It would have to wipe out the 93A damages that are really not even on appeal. The prospect of defeating a 93A assessment without a trial transcript are virtually nonexistent. Mr. Nicholas just stood here and said that $1.25 million of principal is completely undisputed. It would be absurd to think that the patent drive wouldn't at least be entitled to its contract rate. What's the status of the Massachusetts appeal? It's been like two years, hasn't it? The notice of appeal was filed, and then Mr. Fustolo's trial counsel in that case filed a suggestion of bankruptcy, and Mr. Fustolo has done nothing since then to prosecute his appeal. The remedy that would be available to him, and frankly that I've followed in other cases myself, would be to move for relief from the state, to permit patent drive to defend the appeal. This particular judge or practice, Judge Feeney, is to essentially abstain on these claims, let the appeal process play out in the state courts, and then bring what judgment is final back to her court for treatment under the bankruptcy code. Could you address the question I asked your brother in terms of if you had just filed a claim for 1.25 under the guarantees, would you be in any less advantageous a position than you are now? I can answer that question for you, Judge Cayada. In essence, the dynamic would not change for Mr. Fustolo at all. He would be adjudicated a bankruptcy debtor, just as he has been, and the only change that that would have for patent drive and for the bankruptcy estate overall would be what its distribution is from the bankruptcy estate when the trustee administers his assets. It would be a difference of a distribution on $6.7 million versus a distribution on $1.25 million from property of the bankruptcy estate. The change to Mr. Fustolo would be nil. Would there be any adjudication over the legitimacy of the $4 million claim?  As things stand now, will there be any such adjudication over the legitimacy of the $4 million, given that the finding that it's undisputed? That is up to both the bankruptcy trustee, as Mr. Nicklaus has suggested. Should he decide that a distribution on $6.7 million would not be correct, Mr. McLaughlin,  could bring an objection to the claim, or it could also be up to Mr. Fustolo. For example, a debtor may want to involve himself in that process if there was some possibility that his assets could pay all of his creditors in full and generate a pour over what we would call the equity interest of the estate to the debtor. If Mr. Fustolo believed that he was in the money, so to speak, he might decide to go to state court and try to knock down some of the patent drive judgment, but I think it's a foregone conclusion that he can never defeat all of it. Your Honors, I'm running a little short on time, but I want to suggest to you two things. I have a case, Arthur D. Little v. East Cambridge Savings Bank, 35 Mass Appellate Court, 734-625 NE 2nd 1383. Is that your brief? It was not, Your Honor. File a letter. I will, Your Honor. It was some further research that came up in response to Mr. Nicholas's reply. Your Honor, essentially this case can be decided on the issue preclusion principles. The court need not really engage in the debate between the Ninth Circuit and the Fourth Circuit on these cases, which Ms. Cook is going to address. But this judgment, as the record stands today, the federal courts must give full preclusive effect to that. That establishes Mr. Fustolo's liability to patent drive for $6.7 million, both in amount and liability. That is enough to satisfy Section 303, and we ask the court to sustain the bankruptcy court's entry up in order for relief. Thank you. Thank you. Ms. Cook, good morning. Good morning, Your Honors. The central question for this case is whether it's consistent with the bankruptcy code and its underlying policy to affirm the decisions below and that Patton is a qualifying creditor, where Mr. Fustolo hasn't contested, as you heard here today, that he owes Patton at least $1.25 million. I respectfully submit that based on the plain language of Section 303 of the code, that the decision should be affirmed because there can be no bona fide dispute in this case based on that admission. As you know, Section 303 provides an involuntary petition, maybe commenced by three or more entities, which is either a holder of a claim against such a person that is not contingent to liability or the subject of a bona fide dispute as to liability or amount. Whether there is a bona fide dispute is an objective test. I believe the circuits are all in agreement on that. Here, I respectfully submit that the court can stop at the statutory language in applying an objective test because there can be no bona fide dispute based on Mr. Fustolo's admission that he owes at least $1.25 million, which is contrary to his other admissions that he owed $2.7 million, as we put in our brief. Either way, I think the analysis really could end there. But the split in the courts comes with the issue of whether an unstayed state court judgment, per se, establishes an irrebuttable presumption that there's no bona fide dispute along the Drexler-Masiano line of cases. As the district court found, or as the bankruptcy court found, whether there should be the burden-shifting analysis done. Since you started with there is no need to reach these issues to decide this case, it's a fair question about whether there is instrumental value in our addressing this circuit split. Is this actually a burning issue in the bankruptcy courts of Massachusetts? I would say no, Your Honor. I would say that you don't need to go there, especially given the circumstances of this case and the admissions before the court. If you'd like me to continue. I got the point. I do think that it is also worth emphasizing, as Mr. Fenser did with respect to some procedural points here, that Mr. Festola never moved to alter or amend the judgment based on the $4 million discrepancy, which was certainly a tool available to him. And it seems that it would be quite unfair to take advantage of not moving to do that and then come before this court to argue that there is a dispute when he had that remedy available to him. Of what significance is any, as I understand it, Massachusetts has an automatic stay on execution that is in effect in this case? Automatic stay on execution, Your Honor. So your client could not and cannot here today execute on the judgment? Not execute. Does by filing an involuntary bankruptcy proceeding in effect allow you an alternative path to execution? I don't believe it does, Your Honor. I think it's just another enforcement mechanism, the judgment, just as there's an array of state court remedies available. How is this alternative enforcement mechanism different than execution? In other words, isn't what's going to happen in the bankruptcy proceeding is that all of his assets will go to the trustee, the proceeding will conclude, will resolve any contentions and adversary claims that are made, and then his assets will be distributed as if they'd been executed upon? Well, I think that Mr. Fenser pointed out that there will be process, due process in that, and that there are remedies available to Mr. Festolo so that this is not simply. And that's how you distinguish it from the self-help of execution? Yes. If the court has no further questions, I would rest on the brief with respect to our points made, that if you do get to the issue of which test to apply, under either test, the judgment should be affirmed. Thank you. Thank you very much.